No. 24-1910

In the United States Court of Appeals
for the Third Circuit

———————————

IN RE NATIONAL FOOTBALL LEAGUE PLAYERS'
CONCUSSION INJURY LITIGATION

BYRON CUTHBERT & ASSOCIATES LLC,

Appellants.

v.

NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC,

Appellees.

———————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2:12-md-02323) (The Honorable Anita B. Brody, J.)

———————————

**BRIEF OF APPELLEES
NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC**

———————————

Brad S. Karp
Bruce Birenboim
Lynn B. Bayard

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Phone: 212-373-3000
Fax: 212-757-3990

*Attorneys for Appellees*
*National Football League and NFL Properties LLC*

## CORPORATE DISCLOSURE STATEMENT

Appellees, National Football League ("NFL") and NFL Properties LLC ("NFLP") (together, the "NFL Parties"), state that (1) the NFL is an unincorporated association that does not have a parent corporation, and no publicly held corporation owns 10% or more of its stock; and (2) NFLP is a wholly owned subsidiary of NFL Ventures L.P., a Delaware limited partnership, and no publicly held corporation owns more than 10% of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................. i

INTRODUCTION ................................................................ 1

STATEMENT OF JURISDICTION ............................................. 6

STANDARD OF REVIEW.................................................... 8

STATEMENT OF THE ISSUES PRESENTED ................................. 10

STATEMENT OF RELATED CASES AND PROCEEDINGS............... 12

STATEMENT OF THE CASE ............................................... 13

    A.   The Settlement Program........................................ 14

    B.   The Settlement's Audit Provisions and Rules...................... 15

    C.   The Cuthbert Audit and Procedural History ........................ 19

SUMMARY OF ARGUMENT .................................................. 26

ARGUMENT ................................................................... 29

I.   The District Court's Orders Should Be Affirmed ......................... 29

    A.   The District Court Properly Refused to Consider Mr. Cuthbert's Discrimination Allegations................................. 29

    B.   The District Court Correctly Held That the Special Masters' Decision Did Not Modify the Settlement Agreement ........................................................... 31

    C.   The Special Masters' Decision and the Investigation Underlying It Fully Complied with Due Process ................. 33

CONCLUSION ................................................................. 43

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AJA Assocs.* v. *Army Corps of Eng'rs*,
817 F.2d 1070 (3d Cir.1987) ............................................................ 35

*Armstrong* v. *Nat'l Football League*,
137 S. Ct. 607 (2016) ...................................................................... 14

*Bailey* v. *Haley*,
459 F. App'x 152 (3d Cir. 2012) ...................................................... 37

*In re Bayside Prison Litig.*,
419 F. App'x 301 (3d Cir. 2011) ....................................................... 6

*Belas* v. *Juniata Cnty. Sch. Dist.*,
202 F. App'x 585 (3d Cir. 2006) ...................................................... 39

*Berger* v. *Hahnehmann Univ. Hosp.*,
765 F. App'x 699 (3d Cir. 2019) ...................................................... 39

*Castillo* v. *AG of the United States*,
837 F. App'x 96 (3d Cir. 2020) .................................................... 35, 39

*In re Diet Drugs Prods. Liab. Litig.*,
543 F.3d 179 (3d Cir. 2008) .......................................................... 8, 9

*In re Diet Drugs Prods. Liab. Litig.*,
601 F. App'x 162 (3d Cir. 2015) ...................................................... 36

*In re Diet Drugs Prods. Liab. Litig.*,
609 F. App'x 78 (3d Cir. 2015) ....................................................... 36

*Kiareldeen* v. *Ashcroft*,
273 F.3d 542 (3d Cir. 2001) ............................................................ 37

*Laborers' Int'l Union of N. Am., AFL-CIO* v. *Foster Wheeler
Energy Corp.*,
26 F.3d 375 (3d Cir. 1994) ............................................................. 30

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
   923 F.3d 96 (3d Cir. 2019) ........................................................ 8, 14

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
   No. 2:12-md-2323 (E.D.Pa. July 13, 2016), ECF No. 6871 .............. 6, 8

*In re National Football League Players Concussion Injury
   Litig.*,
   821 F.3d 410 (3d Cir. 2016) .............................................................. 13

*NLRB* v. *Local No. 42*,
   476 F.2d 275 (3d Cir. 1973) ............................................................ 39

*United States* v. *Richards*,
   674 F.3d 215 (3d Cir. 2012) .............................................................. 9

*U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC* v.
   *Vill. at Lakeridge, LLC*,
   583 U.S. 387 (2018) ............................................................................ 9

*Rode* v. *Dellarciprete*,
   892 F.2d 1177 (3d Cir. 1990) .............................................................. 9

*In re Tutu Water Wells CERCLA Litig.*,
   326 F.3d 201 (3d Cir. 2003) ............................................................ 39

**Statutes**

28 U.S.C. § 1291 .................................................................................... 6

42 U.S.C. § 1981 ....................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. Rule 53(f)(3)(B) ...................................................... 6, 8

## INTRODUCTION

This Appeal—a meritless challenge to the District Court's sound decision affirming indisputable findings that Appellant Byron Cuthbert engaged in widespread fraud in connection with the NFL Concussion Settlement Program—should be denied.

As this Court is aware, the NFL Concussion Settlement resolved, on a class-wide basis, claims by Retired NFL Football Players arising out of the alleged long-term risks associated with concussions and sub-concussive injuries. The uncapped Settlement allows Retired Players to receive monetary awards if they are diagnosed with certain Qualifying Diagnoses, including Alzheimer's Disease, over the Settlement's 65-year term. To ensure the integrity of the Settlement Program, the Settlement Agreement contains robust audit provisions. These provisions, approved by the District Court and this Court, obligate and authorize the neutral Claims Administrator to investigate potential fraud in the Settlement Program, and afford the Special Masters a wide range of available remedies if fraud is uncovered in the Program, including the denial of claims associated with that fraud.

Appellants are lawyer Byron Cuthbert, his firm Byron Cuthbert & Associates, LLC, and certain Class Members represented by

Mr. Cuthbert.[1]  The Claims Administrator, pursuant to its obligations and authority under the Settlement Agreement's audit provisions, engaged in an extensive years-long investigation into Mr. Cuthbert's practices in the Settlement Program, resulting in a 225-page audit report (the "Audit Report") detailing his rampant fraud.  SA.111–338, Audit Report.  The Audit Report concluded, among other things, that Mr. Cuthbert "orchestrated a process designed to manipulate the judgment of Diagnosing Physicians by attempting to influence their decisions and professional judgment," including through the use of  PET scan reports that Mr. Cuthbert knew were unreliable, but nevertheless "continued to present [] as the 'ticket' to a Qualifying Diagnosis of Alzheimer's Disease." *See* SA.118–34, 156–61, 163, Audit Report at 6–22, 43–48, 49.  The Audit Report also determined that Mr. Cuthbert  "pressured Program doctors to change their diagnoses, drafted a medical record under a doctor's name, prepared third-party affidavits that included specific language that was not actually unique to the Players," and "possibly coached his clients on how to perform during their exams."  *See* SA.128–146, 163, Audit Report at 16–34, 49.

---

[1]  For clarity and consistency, this brief refers to Byron Cuthbert, his firm, and Appellants as "Mr. Cuthbert" throughout.

Following extensive briefing by Mr. Cuthbert and the NFL Parties, the Special Masters issued a decision (the "Special Masters' Decision"), which adopted the Audit Report's factual findings and ordered multiple remedies pursuant to the Settlement Agreement, including the denial, without prejudice to refiling, of all claims possibly infected by Mr. Cuthbert's fraud. *See* A.1–7. Under the Settlement Agreement's terms, Mr. Cuthbert could not contest the factual findings of fraud in the Special Masters' Decision, which are not reviewable by the District Court.

Nonetheless, Mr. Cuthbert filed purported legal objections to the Decision. The District Court rejected his challenges, holding that: (i) certain objections improperly attempted to challenge the final and binding factual determinations of the Special Masters; (ii) the other objections were without merit because the Special Masters' Decision applied the correct legal standard and did not modify the Settlement; (iii) the audit investigation did not violate the rights of Mr. Cuthbert or his clients; and (iv) Mr. Cuthbert's arguments concerning 42 U.S.C. § 1981 were beyond the scope of the District Court's review because those arguments were not raised before the Special Masters. *Id.* The District Court affirmed the Special Masters' Decision in full.

The instant appeal is founded on the near-identical hodgepodge of arguments and provides no legitimate ground on which to disturb the District Court's sound ruling.

*First*, Mr. Cuthbert argues that the District Court erred by rejecting Mr. Cuthbert's baseless assertion that the Settlement Program somehow discriminated against Mr. Cuthbert in violation of 42 U.S.C. § 1981 as beyond the scope of the District Court's review under the Settlement Agreement because he never raised the argument to the Special Masters. Although Mr. Cuthbert conclusorily asserts on appeal that he did, the record is clear that he did not and that the District Court was thus correct.

*Second*, Mr. Cuthbert contends that the District Court erred by rejecting his assertion that the Special Masters somehow altered the Settlement's diagnostic criteria by allowing the Claims Administrator to use certain software to verify the accuracy of PET scans Mr. Cuthbert submitted in support of Qualifying Diagnoses. The Special Masters did no such thing. The Claims Administrator used the software strictly to verify those records and ultimately establish that Mr. Cuthbert engaged in fraud, and the use of such a tool is well within the Claims Administrator's discretion and broad powers under the Settlement

Agreement to both verify the sufficiency of records submitted to it and to investigate fraud.

*Third*, Mr. Cuthbert claims that the District Court erred by holding that the Claims Administrator's painstakingly detailed investigation into his misconduct did not violate due process and that many of his arguments to the contrary were improper challenges to the final and binding factual determinations of the Special Masters that could not be reviewed by the District Court. Specifically, Mr. Cuthbert contends that the audit investigation somehow violated due process by purportedly relying on hearsay evidence, not having an evidentiary hearing, and denying claims purportedly unconnected to his malfeasance. That is not true under the settled law of this Court. The investigation and its resulting remedies fully complied with the approved terms of the Settlement Agreement and Mr. Cuthbert had notice and ample opportunity to be heard and defend his conduct, which is all due process requires. And to the extent his arguments seek to challenge the factual findings of the Special Masters, as the District Court correctly held, those are final and binding, and not reviewable by this Court or the District Court.

In sum, Mr. Cuthbert has not shown any error by the District Court let alone the requisite clear error or abuse of discretion. Thus, the District Court Order affirming the Special Masters' Decision should be affirmed.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over legal issues presented in the Appeal under 28 U.S.C. § 1291. This Court, however, lacks jurisdiction over challenges to factual findings made during the audit process because, under the Settlement Agreement, the parties stipulated that the Special Masters' factual findings are final and binding and not subject to review in the District Court or this Court. Order at 5, *In re Nat'l Football League Players' Concussion Inj. Litig.*, No. 2:12-md-2323 (E.D. Pa. July 13, 2016), ECF No. 6871 at 5 (with respect to audits referred to the Special Masters, pursuant to Fed. R. Civ. P. 53(f)(3)(B), "the decision of the Master(s) findings will be final and binding") (hereinafter, "ECF No. 6871"); Fed. R. Civ. P. 53(f)(3)(B) (stating that the court "must decide de novo all objections to findings of fact made or recommended by a master, *unless the parties, with the court's approval, stipulate that . . . the findings of a master . . . will be final*" (emphasis added)); *In re Bayside Prison Litig.*, 419 F. App'x 301, 303–04 (3d Cir. 2011) ("As the parties specifically

agreed to be bound by the Special Master's findings of fact those findings are unreviewable by this court or by the district court." (internal citation and quotations omitted)).

## STANDARD OF REVIEW

The Special Master's factual findings are final and binding, and not reviewable by the District Court or this Court. ECF No. 6871 at 5 (with respect to audits referred to the Special Masters, pursuant to Fed. R. Civ. P. 53(f)(3)(B), "the decision of the Master(s) findings will be final and binding").

To the extent this Appeal presents a reviewable legal challenge to the District Court's interpretation of the Settlement Agreement or exercise of its broad authority to enforce, administer, and implement the Agreement in accordance with its and this Court's prior rulings, this Court reviews such District Court actions for "clear error" and "abuse of discretion," respectively. *See In re Nat'l Football League Players' Concussion Inj. Litig.*, 923 F.3d 96, 107 n.8 (3d Cir. 2019) (*quoting Coltec Indus., Inc.* v. *Hobgood*, 280 F.3d 262, 269 (3d Cir. 2002) (this Court reviews "a district court's interpretation of settlement agreements . . . for clear error, as it would in reviewing a district court's treatment of any other contract")); *In re Diet Drugs Prods. Liab. Litig.*, 543 F.3d 179, 184 n.10 (3d Cir. 2008) (this Court "review[s] a District Court's exercise of its equitable authority to administer and implement a class action settlement for abuse of discretion") (citations omitted).

8

Clear error review is substantially deferential. *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC* v. *Vill. at Lakeridge, LLC*, 583 U.S. 387, 394 (2018) (holding that a lower bankruptcy court's findings were "reviewable only for clear error—in other words, with a serious thumb on the scale for the bankruptcy court").

Similarly, abuse of discretion requires a finding that "no reasonable person would adopt the district court's view," *Rode* v. *Dellarciprete*, 892 F.2d 1177, 1182 (3d Cir. 1990), or that the district court's determination rested on "an errant conclusion of law or an improper application of law to fact," *In re Diet Drugs Prods. Liab. Litig.*, 543 F.3d at 184 n.10; *see also United States* v. *Richards*, 674 F.3d 215, 223 (3d Cir. 2012) ("abuse of discretion," while technically distinct from "clear error" review, is substantially similar as it requires a determination that the district court's factual findings were "clearly erroneous").

## STATEMENT OF THE ISSUES PRESENTED

1) Whether the District Court committed clear error or abused its discretion by holding that Mr. Cuthbert's allegation that the Settlement Program discriminated against Mr. Cuthbert in violation of 42 U.S.C. § 1981 was beyond the scope of its review under the terms of the Settlement because he never raised such a claim to the Special Masters in the first instance.

2) Whether the District Court committed clear error or abused its discretion by rejecting Mr. Cuthbert's argument that the Special Masters' Decision modified the Settlement's Injury Definitions by "requiring" use of a certain software, whereas all the Decision did was adopt the factual findings of the Claims Administrator's Audit Report and indisputably did not modify, let alone make a single reference, to either the Injury Definitions or that software.

3) Whether the District Court committed clear error or abused its discretion by holding that the Claims Administrator and Special Masters did not violate the due process rights of Mr. Cuthbert or Mr. Cuthbert's clients where the Claims Administrator undertook an extensive multi-year investigation into Mr. Cuthbert's wide-ranging misconduct in compliance with its obligations under the

Settlement Agreement, the Settlement Program's rules, and all applicable law and where Mr. Cuthbert had notice and a meaningful opportunity to be heard, which is all due process requires.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

The following appeals have been taken before this Court arising out of *In re Nat'l Football League Players' Concussion Inj. Litig.*, No. 2:12-md-02323-AB (E.D. Pa.): Third Circuit Case Nos. 14-03520, 14-03693, 15-02206, 15-02217, 15-02230, 15-02234, 15-02272, 15-02273, 15-02290, 15-0229, 15-02292, 15-02294, 15-02304, 15-02305, 18-01040, 18-01482, 18-01639, 18-02012, 18-02184, 18-02225, 18-02249, 18-02253, 18-02332, 18-02416, 18-02417, 18-02418, 18-02419, 18-02422, 18-02582, 18-02650, 18-02651, 18-02661, 18-02684, 18-02724, 19-01385, 19-01760, 19-01771, 19-02085, 19-02753, 20-03401, 22-02381, 22-02441, and 23-1585.

**STATEMENT OF THE CASE**

The Settlement Agreement at issue in this Appeal resolved, on a class-wide basis, claims by Retired NFL Football Players arising out of the alleged long-term risks associated with concussions and sub-concussive injuries. *See In re National Football League Players Concussion Injury Litig.*, 821 F.3d 410, 420 (3d Cir. 2016) ("Third Circuit Approval Order"). With oversight from the District Court, the parties ultimately agreed on a final Settlement Agreement that established a landmark 65-year Settlement Program to compensate Retired Players for certain Qualifying Diagnoses in accordance with specified diagnostic criteria. *Id.* at 423–24. On April 22, 2015, following a fairness hearing and after thorough scrutiny, the District Court finally approved the Settlement. *Id.* at 423. The District Court retained "continuing and exclusive jurisdiction" over the Settlement Agreement's administration and enforcement. SA.80, *In re Nat'l Football League Players' Concussion Inj. Litig.*, Section XXVII, Class Action Settlement Agreement (As Amended), Case 2:12-md-2323 (Feb, 13, 2015) ("Settlement Agreement").

This Court affirmed the District Court in all respects, holding that "the settlement represents a fair deal for the class." Third Circuit Approval Order at 440, 447–48. The Supreme Court denied certiorari

review on December 12, 2016. *In re Nat'l Football League Players'*
*Concussion Inj. Litig.*, 923 F.3d at 101 (citing *Gilchrist* v. *Nat'l Football*
*League*, 137 S. Ct. 591 (2016) (Mem.)); *Armstrong* v. *Nat'l Football*
*League*, 137 S. Ct. 607 (2016) (Mem.)).  The Settlement Agreement
became effective on January 7, 2017.

## A.    The Settlement Program

The Settlement Agreement established a Settlement Program,
through which eligible Retired Players may file claims for Monetary
Awards for Qualifying Diagnoses, and sets forth the framework through
which Retired Players submit Claim Packages to a neutral, District
Court-appointed Claims Administrator.  SA.43–44, Settlement
Agreement § 8.3.  The Qualifying Diagnoses eligible for a Monetary
Award are:  (1) Level 1.5 Neurocognitive Impairment (early dementia);
(2) Level 2 Neurocognitive Impairment (moderate dementia);
(3) Alzheimer's Disease; (4) Parkinson's Disease; and (5) Amyotrophic
Lateral Sclerosis.  A.44, Settlement Agreement § 6.3(a)).[2]  If a Retired
Player is evaluated and does not receive a Qualifying Diagnosis, he may

---

[2]  The Settlement Agreement also provided for Monetary Awards for
certain Diagnoses of Death with CTE made prior to April 22, 2015,
with certain limited exceptions.  SA.104–09, Settlement Agreement
§ 6.3(a), Ex. 1.

be re-evaluated an unlimited number of times over the Settlement's 65-year term.

## B.    The Settlement's Audit Provisions and Rules

The Settlement Agreement provides for a robust audit system to prevent the submission and payment of claims that, among other things, rely on fraudulent records.   Specifically, the Settlement Agreement requires Class Counsel, Counsel for the NFL Parties, and the Claims Administrator to "establish and implement procedures to detect and prevent fraudulent submissions to, and payments of fraudulent claims from, the Monetary Award Fund." A.53, Settlement Agreement § 10.3(b); *see also* A.56, § 10.4 (requiring parties to Settlement to "establish system-wide processes to detect and prevent fraud including, without limitation, processing quality training and review and data analytics to spot 'red flags' of fraud, including, without limitation, alteration of documents, questionable signatures, duplicative documents submitted on claims, the number of claims from similar addresses or supported by the same physician or office of physicians, data metrics indicating patterns of fraudulent submissions, and such other attributes of claim submissions that create a reasonable suspicion of fraud.").

Moreover, the Settlement Agreement provides that "[t]he Claims Administrator will have the discretion to undertake or cause to be undertaken further verification and investigation, including into the nature and sufficiency of any Claim Package or Derivative Claim Package documentation, including, without limitation, as set forth in [the audit provisions of] Section 10.3." SA.45, Settlement Agreement § 8.6(b).

A claim may be placed into audit if it is randomly selected, if it meets certain submissions criteria, or if the Claims Administrator makes a finding that there is a possibility of fraud. *See* A.54–56, Settlement Agreement § 10.3(c), (d), (j).   During the audit of a claim or group of claims, the Claims Administrator may conduct an investigation, including by requiring a Claimant to submit additional records, answer questions, or provide other information. A.53–54, Settlement Agreement § 10.3 (b)(i), (e).  If based on its investigation the Claims Administrator determines that there is a reasonable basis to support a finding that there has been a misrepresentation, omission, or concealment of a material fact made in connection with the claim or claims, the Claims Administrator notifies the affected Class Member or Class Members and refers the claim or claims to the Special Master.  SA.60–61, Settlement Agreement § 10.3(i).

Upon referral, the Special Masters' "review and findings shall take into account whether the misrepresentation, omission or concealment was intentional," and the Special Masters may order a wide degree of remedies including, without limitation, (i) denial of the Claim or Claims, (ii) additional audits of Claims, (iii) referral of an attorney or physician to disciplinary boards, (iv) referral to federal authorities, and (v) disqualification of an attorney, physician, or Class Member from further participation in the Settlement Program. *Id.*

The District Court adopted the Rules Governing the Audit of Claims (the "Audit Rules" or "Rules") pursuant to these broad provisions. *See* A.64–70, Rules 1, 2, 6. The Audit Rules "govern the Audit by the Claims Administrator of Claims for Monetary Awards and Derivative Claimant Awards in the Settlement Program established under the Settlement Agreement and disposition of potentially fraudulent Claims referred to the Special Master after completion of an Audit." A.67, Rule 1. Under the Audit Rules, if the Claims Administrator determines that "there is a reasonable basis to support a finding that there has been a misrepresentation, omission, or concealment of material fact in connection with a Claim," the Claims Administrator provides its audit report to the parties to the Settlement and refers the audit to the Special

17

Masters.  A.73, Rules 15, 16.)  The Audit Rules mandate that the subject of the investigation receives the audit report, and set forth a briefing schedule before the Special Masters, which allows the subject of the investigation to contest the audit findings.  A.73–74, Rules 17–22.

The Special Masters may, in their discretion, request additional materials or oral argument, but no discovery, testimony, cross-examination, or other evidentiary hearing is allowed.  A.74–75, Rules 22–24.  The Special Masters then determine whether the target(s) of the audit investigation "have established that there is no reasonable basis to support a finding that there has been a misrepresentation, omission or concealment of material fact made in connection with a Claim" and issue a written decision which may "direct such relief as deemed appropriate."  A.75–77, Rules 27, 28, 31.  The decision of the Special Masters is "final and binding" and "is not subject to appeal or review by the Court" except that a party to the audit proceeding may object to a conclusion of law.  A.77, Rules 33, 34.  If a party files a legal objection with the District Court, the other parties to the audit proceeding may respond.

To date, the Claims Administrator has referred 22 audit reports containing adverse findings to the Special Masters.  SA.419–20, July 17, 2023 *Claims Administrator Status Report 23*, at 17–18.  These audits

concerned four neurologists, twelve neuropsychologists, five law firms, seven individual Settlement Class Members, and one claims preparation company. *Id.*

## C.    The Cuthbert Audit and Procedural History

On March 3, 2023, the Claims Administrator referred to the Special Masters the February 15, 2023 Audit Report (the "Audit Report") concerning Mr. Cuthbert and his law firm, which at the time represented 223 Settlement Class Members. The Audit Report details the Claims Administrator's multi-year investigation of Mr. Cuthbert, which uncovered widespread fraudulent practices. Specifically, the Audit Report sets forth overwhelming evidence that Mr. Cuthbert "orchestrated a process designed to manipulate the judgment of Diagnosing Physicians by attempting to influence their decisions and professional judgment," including based on purportedly positive PET scan reports from Dr. Daryl Eber that Mr. Cuthbert *knew were unreliable*, but nevertheless "continued to present [] as the 'ticket' to a Qualifying Diagnosis of Alzheimer's Disease." *See* A.130, Audit Report at 49.

A key issue in the Claims Administrator's audit investigation was Mr. Cuthbert's submission of Amyloid PET scans in support of his client's purported Qualifying Diagnoses of Alzheimer's Disease. Amyloid PET

scans are used to detect accumulations of the protein amyloid in the brain and can be useful for diagnosing Alzheimer's in a clinical setting. *See* A.87–88, Audit Report at 6–7. The Claims Administrator does not require PET scans for a diagnosis of Alzheimer's Disease in the Settlement Program, but such scans may be submitted to support a diagnosis. *Id.* During the audit investigation into Mr. Cuthbert's alleged fraud, the Claims Administrator worked with a neutral Nuclear Medicine Consultant to verify the accuracy and reliability of the PET scans he submitted. A.128 at 47. During these analyses, the Nuclear Medicine Consultant used software called Standard Uptake Value ratio ("SUVr"), which is "the most widely used and established metric" for measuring amyloid burden. *See* A.160 (citing Ex. 1 [of Objection Response] at 3512); *see also* A.129, Audit Report at 47. The Nuclear Medicine Consultant confirmed that purportedly positive PET scans submitted by Mr. Cuthbert were, in fact, not "consistent with a positive scan." A.129, Audit Report at 47.

The Audit Report also demonstrated that Mr. Cuthbert violated Program rules by, among other things, pressuring Program doctors to change their diagnoses, and drafting a medical record under a doctor's name. *See* A.83–84, Audit Report at 2–3. The Audit Report also found

that Mr. Cuthbert prepared third-party affidavits—which are, for certain Qualifying Diagnoses, required to be submitted by a close friend or non-family member of the Claimant to verify that the Claimant is experiencing the requisite level of impairment—that included specific language that would support a diagnosis but was not actually unique to the players.  *Id.*  The Audit Report found that these actions constituted material misrepresentations, made for the purpose of improperly securing awards.  A.129, Audit Report at 48.

Finally, the Audit Report found some evidence, based on neutral expert assessment and opinion, that Mr. Cuthbert coached his clients on how to perform during their medical exams.  *See* A.97–115, Audit Report at 16–34, 49.  When questioned by the Claims Administrator during the investigation, Mr. Cuthbert lied about his involvement in drafting medical reports for a doctor.  *See* A.105, Audit Report at 24.  And even after Mr. Cuthbert received a draft of the Audit Report and spoke to the Claims Administrator about these issues, he continued to submit unreliable records—"[i]nstead of working with [the Claims Administrator], he worked to further entrench his unsupportable position [that he had committed no wrongdoing], [which] has placed an extra and

21

unnecessary burden on the Program." *See* A.122–30, Audit Report at 41–49.

The Special Masters accepted the referral of the Audit Report pursuant to Section 10.3 of the Settlement Agreement and the Audit Rules. Following additional briefing by Mr. Cuthbert and the NFL Parties, the Special Masters issued their Rule 27 Decision on June 28, 2023, and the Special Masters concluded that Mr. Cuthbert failed to meet his burden to establish that "there is no reasonable basis to support the Audit Report's finding." Specifically, the Special Masters' "adopt[ed] the factual findings of the Claims Administrator" including that "Mr. Cuthbert knowingly used unreliable Amyloid PET scans, attempted to have Diagnosing Physicians change their diagnoses, and drafted both medical records and third party affidavits," and that "Mr. Cuthbert was not truthful in responding to the investigatory process, making it more difficult for the Claims Administrator to carry out its duties." A.3–4.

Indeed, the Special Masters found that "Mr. Cuthbert's wrongful conduct—and his unrepentant behavior when confronted with the problems he caused—was persistent." A.5. The Decision concluded that Mr. Cuthbert's "conduct led to multiple material misstatements in claims submitted on behalf of Settlement Class Members. It has diverted the

attention of the Claims Administrator, raised the administrative cost of this Program, and ultimately harmed his clients." A.6.

Accordingly, the Special Masters found that Mr. Cuthbert "plainly failed" to meet his burden "to show 'that there is no reasonable basis' for the Claims Administrator's factual findings about his misrepresentations and omissions"—indeed, the Special Masters characterized Mr. Cuthbert's briefing as "tendentious when it was not evasive." A.3. In light of Mr. Cuthbert's "persistent" and "unrepentant" conduct, the Special Masters issued remedies pursuant to Section 10.3(i) of the Settlement Agreement, including: (i) denying 12 claims directly implicated in the Audit without prejudice; (ii) directing the Claims Administrator to review all unpaid claims currently or formerly represented by Mr. Cuthbert, and deny them if they are supported by an unreliable PET scan or if the Claims Administrator cannot certify that the claim is "entirely free of issues discussed in the Audit"; and (iii) censuring Mr. Cuthbert and ordering that a copy of the Decision be made available on the NFL Concussion Settlement Website, redacting all names other than those of Mr. Cuthbert and Dr. Eber. A.7.

Mr. Cuthbert lodged two objections to the Special Masters' Decision in the District Court, advancing various arguments that the Decision was

substantively or procedurally erroneous; the NFL Parties opposed each objection.  On February 29, 2024, the District Court issued an Order, which considered each of the grounds on which the objections challenged the Decision and concluded that "[n]one of [Mr. Cuthbert's] arguments are availing." A.13.

Specifically, the District Court correctly held, in relevant part, that (i) Mr. Cuthbert's argument that the audit violated 42 U.S.C. § 1981 exceeds the scope of review because he failed to raise it in his briefing before the Special Masters; (ii) the Special Masters did not improperly modify the Settlement Agreement's Injury Definitions by allowing the Claims Administrator to use certain software in the course of its investigation to accurately analyze the PET scans Mr. Cuthbert submitted; (iii) the Decision was not a violation of Settlement Class Members' or Mr. Cuthbert's right to due process; and (iv) the Decision followed from an adequate process and record.  A.5–13.  Accordingly, the District Court denied the objections and affirmed the  Special Masters' Decision in its entirety.  A.13.

On March 6, 2024, Mr. Cuthbert filed a motion asking the District Court to reconsider the Order insofar as it rejected the arguments that (i) the audit violated 42 U.S.C. § 1981, and (ii) the Special Masters and

Claims Administrator improperly modified the Settlement Agreement's Injury Definitions.  A.171.  The District Court denied the motion for reconsideration on April 30, 2024, holding that neither of Mr. Cuthbert's contentions "implicates a clear error of law or fact that was material to the audit appeal" and Mr. Cuthbert did not show that reconsideration "is necessary to prevent a manifest injustice."  A.23.

On May 16, 2024, Mr. Cuthbert filed this Appeal of the District Court's order affirming the Special Masters' Decision and its order denying his motion for reconsideration.  For the reasons set forth below, this Court should affirm the District Court's orders.

## SUMMARY OF ARGUMENT

Mr. Cuthbert has presented no viable ground to disturb the District Court's orders affirming the Special Masters' Decision finding that he engaged in widespread fraud in the Settlement Program and denying without prejudice those claims infected by the fraud.  As the District Court correctly held in denying Mr. Cuthbert's objections to the Special Masters' Decision, (i) Mr. Cuthbert's allegations of discrimination were not raised in briefing before the Special Masters so such arguments were beyond the scope of the District Court's review, (ii) the Special Masters' Decision did not improperly modify the Settlement Agreement, and (iii) the Claims Administrator's investigation and the Special Masters' Decision fully comported with the terms of the Settlement Agreement and due process.  None of Mr. Cuthbert's appeal arguments otherwise has merit.

*First*, Mr. Cuthbert asserts that he raised his baseless  arguments that he was discriminated against in violation of 42 U.S.C. § 1981 before the Special Masters.  His sole support for that assertion, however, is a stray mention of "bias" contained in a section of a brief unrelated to 42 U.S.C. § 1981, which addressed his alleged use unreliable PET scans, a factual determination the Special Masters' Decision addressed at length.

This is plainly insufficient, and because under the terms of the Settlement, objections to audit decisions are limited to "conclusion[s] of law by the Special Master," the District Court correctly held that Mr. Cuthbert's new arguments before it were beyond the scope of its review.

*Second*, Mr. Cuthbert contends that the District Court erred by rejecting his argument that the Special Masters' Decision improperly required use of a certain software to make an Alzheimer's diagnosis, thereby improperly modifying the Settlement Agreement. But nowhere did the Special Masters' Decision do anything of the sort; it does not even so much as mention the subject software. Rather, the Claims Administrator— consistent with its broad investigative powers under the Audit Rules and its express discretion to "undertake or cause to be undertaken further verification and investigation, including into the nature and sufficiency of any Claim Package"—used the software to confirm that the PET scan medical records submitted in support of Mr. Cuthbert's clients' claims were not accurate or reliable. The Special Masters' Decision simply affirmed the finding that Mr. Cuthbert's clients' medical records were unreliable. That factual finding was not reviewable by the District Court; nor is it reviewable in this Court.

*Third*, recognizing that he cannot challenge the Special Masters' conclusive and binding findings that he had engaged in extensive fraud, Mr. Cuthbert concocts a host of "due process" arguments, all of which the District Court correctly rejected. Simply put, the Claims Administrator's investigation and Special Masters' Decision all complied with the express terms of the Settlement Agreement, the Settlement Program's rules, and due process. Mr. Cuthbert was given ample notice and multiple opportunities to be heard; he instead chose intransigence and continued his fraud campaign throughout the investigative process. As for the denied claims, as the District Court also correctly concluded, all were infected by Mr. Cuthbert's deceit and, in any event, were denied without prejudice to the subject claimants filing a new claim at any time—resulting in no harm, let alone a due process violation, to those claimants.

In sum, Mr. Cuthbert has presented no legitimate ground to reverse the District Court's sound orders affirming the Special Masters' Decision—much less any clear error or abuse of discretion—and the orders of the District Court should thus be affirmed.

# ARGUMENT

## I.    The District Court's Orders Should Be Affirmed

None of Mr. Cuthbert's arguments on appeal comes close to meeting the high standard of clear error or abuse of discretion necessary to reverse the District Court's correct ruling affirming the Special Masters' Decision finding that Mr. Cuthbert engaged in rampant fraud in the NFL Concussion Settlement Program.

### A.    The District Court Properly Refused to Consider Mr. Cuthbert's Discrimination Allegations

Mr. Cuthbert first contends that the District Court erred by holding that his purported challenge to the Special Masters' Decision under 42 U.S.C. § 1981 was beyond the scope of review because "[Mr. Cuthbert] did not present this argument concerning alleged bias by the Claims Administrator in its briefing to the Special Masters." A.19–20. In supposed support, Mr. Cuthbert contends that he adequately set forth this argument before the Special Masters who "skipped over" it. (Appellant Br. at 19.) That assertion is completely belied by the record.

Specifically, Mr. Cuthbert claims that he did raise his argument that the Claims Administrator's investigation violated 42 U.S.C. § 1981 before the Special Masters through a stray statement that "the Claims Administrator's actions *shows bias* towards Mr. Cuthbert—as claims

with the same PET scan evidence are being approved for other attorneys but not [Mr.] Cuthbert," along with an accompanying footnote citing exhibits and referencing certain claimants.   (Appellant Br. at 16 (emphasis in original).)  But not only was the passing reference to alleged bias in the brief before the Special Masters unconnected to any allegation with respect to 42 U.S.C. § 1981, it was found in a section titled "Attorney [Cuthbert] Did Not Use Unreliable PET Scans," an issue both the Special Masters and this Court addressed at length.  *See* SA.339–343, Rule 20 Submission at 2–6.  The one sentence and related footnote concerning unspecified "bias" Mr. Cuthbert points to stand in stark contrast to the multi-page sections contained (for the first time) in Mr. Cuthbert's objections before the District Court titled "The Rule 27 Decision was unreasonable because it violated 42 U.S.C. § 1981."  *See* SA.359–62, Objection at 4–7; SA.384–386, Suppl. Objection at 6–8.  Mr. Cuthbert's passing reference to some unspecified bias before the Special Masters is entirely insufficient, as the District Court properly held, and that ruling is, at the very least, plainly not clearly erroneous.  *See Laborers' Int'l Union of N. Am., AFL-CIO* v. *Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("[A] passing reference to an issue . . . will not suffice

to bring that issue before this court.") (internal citations and quotations omitted).[3]

## B. The District Court Correctly Held That the Special Masters' Decision Did Not Modify the Settlement Agreement

Mr. Cuthbert next claims that the District Court erred by rejecting his argument that the Special Masters' Decision tacitly approved the Claims Administrator's use of SUVr software when evaluating the reliability of PET scans submitted by Mr. Cuthbert, which improperly modified the Settlement's Injury Definitions. (*See* Appellant Br. at 22–27.)  The District Court, however, correctly rejected this argument because the Special Masters' Decision "in no way modified the definition for the Qualifying Diagnosis of Alzheimer's Disease contained in the Settlement Agreement" and there was no support for Mr. Cuthbert's claim that the Special Masters' Decision effectively and improperly

---

[3] Mr. Cuthbert cites several cases concerning the sufficiency of complaints in discrimination cases, (Appellant Br. at 18–19), but those cases involve pleading standards under the Federal Rules of Civil Procedure and are inapplicable here, where the proper bounds of Mr. Cuthbert's objections are delineated by the Program's rules and District Court's orders implementing the Settlement Agreement. Further, Mr. Cuthbert's reliance on these cases confounds the relevant issue. Although Mr. Cuthbert's allegations are certainly meritless, the District Court did not reach the sufficiency of those allegations because they were procedurally improper.  Thus, these cases do nothing to support Mr. Cuthbert's position.

requires the use of SUVr software to render a Qualifying Diagnosis of Alzheimer's Disease.  A.17–18.

In fact, the use of SUVr—"the most widely used and established metric" for measuring amyloid burden, A.160 (citing Ex. 1 [of Objection Response] at 3512)—had nothing to do with the Injury Definitions. Rather, it was merely a tool used by the Claims Administrator pursuant to both its well-established discretion to "undertake or cause to be undertaken further verification and investigation, including into the nature and sufficiency of any Claim Package" and its broad investigative powers under the Audit Rules to ascertain the veracity of the medical records underlying potentially fraudulent diagnoses.  SA.46, Settlement Agreement § 8.6(b), Art. X.  Accordingly, Mr. Cuthbert's contention that the Special Masters' Decision and District Court's order affirming that Decision modified the Injury Definitions, despite never mentioning those Injury Definitions, much less purporting to modify them, is without merit.

As for the argument that, as a result, the Claims Administrator and Special Masters wrongly determined that Mr. Cuthbert knowingly used unreliable scans, and that those conclusions of unreliability formed a significant portion of the findings against Mr. Cuthbert, (Appellant Br.

at 23–27), those arguments are a transparent attempt to improperly challenge the factual findings of the Special Masters, which are final and binding.

The Claims Administrator's numerous factual findings, as adopted by the Special Master—including that Mr. Cuthbert knowingly submitted PET scans that were unreliable in support of claims and improperly pressured physicians to render diagnoses based on those PET scans—were not subject to review by the District Court and are not reviewable by this Court. Thus, Mr. Cuthbert's attempt to challenge these well-founded and unreviewable factual determinations should be rejected.

## C.   The Special Masters' Decision and the Investigation Underlying It Fully Complied with Due Process

As a last resort, Mr. Cuthbert argues that the Special Masters' Decision was (i) "arbitrary and capricious" and issued in violation of due process because it purportedly relied on hearsay evidence, (ii) the Special Masters did not conduct an evidentiary hearing, and (iii)  the Decision was allegedly "overly broad" by denying claims Mr. Cuthbert contends

were not connected to his misconduct.[4]  Each of these arguments is meritless; the Special Masters' Decision and the Claims Administrator's investigation on which it was based fully complied with due process.

As the District Court held, much of Mr. Cuthbert's purported "due process" arguments are in actuality an impermissible attempt to challenge the Special Masters' final and binding factual determinations based on the extensive record gathered by the Claims Administrator. A.18–19.

Indeed, the complaints about the sufficiency and process of the Claims Administrator's multi-year investigation that resulted in a several-hundred-page audit report detailing Mr. Cuthbert's extensive misconduct represent a transparent attempt to challenge the Special Masters' binding factual findings that resulted from that investigation. Such a challenge, which is plainly improper under the District Court's Order and Audit Rules, which provide that "[t]he decision of the Special Master on a referred Audit Report is final and binding on the Parties to the Audit Proceeding and the Claims Administrator and is not subject to

---

[4]  Mr. Cuthbert also argues that the use of SUVr software violated due process. (Appellant Br. at 28–29). But, as explained above, the use of that software to evaluate the PET scans Mr. Cuthbert submitted was entirely proper and well within the Claims Administrator's well-established authority. *Supra* at 31.

appeal or review by the Court, except that . . . the Court will review de novo . . . any objection to the Special Master's conclusions of law." A.77, Rule 33. As a result, Mr. Cuthbert's attempts to relitigate the Special Masters' factual determinations should be denied as procedurally improper.

Even if the Objection's arguments were not procedurally improper, they are substantively baseless. All due process requires is "notice and a meaningful opportunity to be heard." *Castillo* v. *AG of the United States*, 837 F. App'x 96, 100 (3d Cir. 2020); *AJA Assocs.* v. *Army Corps of Eng'rs*, 817 F.2d 1070, 1073 (3d Cir.1987) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (citations omitted)); *see also* Appellant Br. at 28. Mr. Cuthbert cannot seriously contend that he or his clients did not receive due process during the Claims Administrator's investigation, "which included interviewing Mr. Cuthbert and sharing with him the preliminary conclusions of the investigation into his practices," A.18–19, or before the Special Masters, where he and his clients submitted briefing contesting the Claims Administrator's findings prior to the Decision being issued. As the District Court held, both Mr. Cuthbert and his

clients received due process, and Mr. Cuthbert's arguments to the contrary on appeal are meritless.

*First*, this Court has held that there is no due process violation when disputes arising out of the administration of a settlement trust are resolved according to the settlement program's previously-approved procedures. For example, in *In re Diet Drugs Prods. Liab. Litig.*, 601 F. App'x 162, 165 (3d Cir. 2015), this Court held that where the audit rules provided a claimant with "ample and meaningful opportunities to be heard," due process was not violated even though the claimant was not permitted to submit expert rebuttal reports under those rules. Here, Mr. Cuthbert concedes that the Audit Rules do not provide for an evidentiary hearing, (Appellant Br. at 39), and does not and cannot contend that he did not have an "ample and meaningful opportunity to be heard" through the significant briefing he was afforded pursuant to those Audit Rules. *See id.*; *see also In re Diet Drugs Prods. Liab. Litig.*, 609 F. App'x 78, 83 (3d Cir. 2015) (no due process violation because "[claimant] had ample opportunity to submit evidence and argument to decisionmakers, and he took advantage of the thorough process available to him").

*Second*, Mr. Cuthbert argues that the Decision was based on insufficient evidence and hearsay, including because the Claims Administrator did not identify the three lawyers and the prospective clients who provided *anonymous* tips, and thus Mr. Cuthbert could not "confront" them and "personally refute their allegations." (*See* Appellant Br. at 30.) These complaints are baseless. The Claims Administrator undertook an exhaustive investigation into Mr. Cuthbert's wide-ranging misconduct over the course of four years, resulting in a 225-page Audit Report. Each finding in that Audit Report (and the Special Masters' Decision) is supported and corroborated by ample evidence that the Claims Administrator uncovered during the course of its extensive investigation, so no due process violation occurred. *See, e.g.*, *Bailey* v. *Haley*, 459 F. App'x 152, 154 (3d Cir. 2012) (no due process violation where hearing officer relied on corroborated hearsay evidence). Moreover, despite Mr. Cuthbert's attempt to invoke the Federal Rules of Evidence, they do not apply in audit proceedings under the Settlement Agreement and Audit Rules.[5]

---

[5]  Indeed, even in more formal proceedings, adjudicators are free to rely on hearsay evidence without violating an individual's due process rights. *See, e.g.*, *Kiareldeen* v. *Ashcroft*, 273 F.3d 542, 549 (3d Cir. 2001) (use of hearsay evidence in immigration proceeding does not violate due process).

Mr. Cuthbert also vastly overstates the import of the anonymous tips received by the Claims Administrator. As the District Court noted, "[t]he identity of early tipsters and complainants carries little relevance given the extensive investigation undertaken thereafter by the Claims Administrator." A.19 n.7. Indeed, many of these tips (including all of the attorney tips) were received more than three years before the Claims Administrator issued the Audit Report, and the findings in the Audit Report (and Decision) were based on the Claims Administrator's subsequent investigation. Anonymous tips are a key tool for uncovering potential misconduct in the Settlement Program, and revealing tipsters' identities—whether the tipsters are lawyers or class members—would have a significant chilling effect and impede the Claims Administrator's efforts to identify fraud in the Program. Nothing in the Settlement Agreement or Audit Rules gives Mr. Cuthbert the right to the identity of anonymous tipsters or the right to confront them.

*Third*, the Appeal claims that the Special Masters erred by refusing to grant Mr. Cuthbert an evidentiary hearing or take live testimony" to resolve purported factual disputes. But the Audit Rules allow only oral argument at the Special Masters' discretion, and expressly prohibit "testimony, cross-examination, or other evidentiary hearing[s] on an

Audit Proceeding." A.74–75, Rule 24. Thus, it was not clear error or an abuse of discretion not to hold an evidentiary hearing, particularly in light of the overwhelming evidence of misconduct set forth in the Audit Report. Furthermore, it is well established that due process does not require oral argument, live testimony, or an evidentiary hearing. *See NLRB* v. *Local No. 42*, 476 F.2d 275, 276 (3d Cir. 1973) (due process does not require oral argument); *Belas* v. *Juniata Cnty. Sch. Dist.*, 202 F. App'x 585, 587 (3d Cir. 2006) (due process does not require live testimony); *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 210 (3d Cir. 2003) (due process does not require evidentiary hearing). This is especially true because the touchstone of due process was met— Mr. Cuthbert and his clients had meaningful and ample opportunity to be heard through briefing before the Special Masters. *See Castillo*, 837 F. App'x at 100 ("At its core, constitutional due process requires notice and a meaningful opportunity to be heard."); *Berger* v. *Hahnehmann Univ. Hosp.*, 765 F. App'x 699, 703 (3d Cir. 2019) (due process not violated where court dismissed complaint without oral argument because plaintiff had opportunity to be heard through briefing).

*Fourth*, Mr. Cuthbert takes issue with the Special Masters' chosen remedies because he contends that those remedies were "overly broad"

and "dismissed claims that were not tied to any malfeasance by
[Mr. Cuthbert]." (Appellant Br. at 32–33.)  Putting aside that the Special
Masters' findings on Mr. Cuthbert's misconduct and the weight they
chose to assign to specific evidence are quintessential factual
determinations, which are final and binding, the District Court's
affirmance of the remedies imposed by the Special Masters was not clear
error or an abuse of discretion.

As the District Court explained, the Settlement Agreement "gives
broad discretion to the Special Masters to remedy a misrepresentation,
omission or concealment involving a claim," including through the denial
of claims in the event of fraud, and the District Court has "previously
upheld the legal authority of the Special Masters to deny a group of
claims as a result of a shared discrepancy in material evidence."  A.14–
15 (citing ECF No. 11255 at 5–7).  Here, the District Court correctly held
that "the Special Master determined that the most effective process by
which deserving claimants could obtain valid awards was to deny the
claims without prejudice to file new claims based on records that are free
of the concerns identified in the Audit."  *Id.*  As the Special Masters
explained:

> [T]he issues described in this Audit are intractable, ranging
> from unreliable PET scans to undue pressure on doctors.  The

task of separating out the genuine from the tainted in the medical evidence behind each Qualifying Diagnosis would be difficult, time-consuming, and in our experience unlikely to lead to successful submissions based on the existing medical records. We thus deny these claims now to expedite the process of Claimants obtaining new medical records unsullied by the issues described in this Audit.

A.14. The District Court's conclusion that this "approach is neither arbitrary nor unreasonable" is not remotely close to clear error or abuse of discretion.

Mr. Cuthbert's disagreement with the Special Masters' conclusions and remedies does not render the District Court's order affirming the Special Masters' Decision an abuse of discretion, clear error, or a violation of due process. The Special Masters' rationale for the remedies is reasonable on its face, and Mr. Cuthbert's contention that certain Claims unconnected to his well-documented misconduct were denied is simply false. The only claims denied were those that involve the issues raised in the Audit Report, which includes those relying on unreliable PET scans and lawyer-pressured physicians. The difficulty of untangling the tainted from untainted medical records is "intractable" and any denial of those claims will expedite the process of any deserving claimants obtaining new Qualifying Diagnoses, as all denials are without

prejudice and allow the claimants to submit new claims in the future. Thus, the claimants suffered no harm, let alone a due process harm.

Simply put, the Claims Administrator's painstaking multi-year investigation into Mr. Cuthbert's misconduct was entirely consistent with the Settlement Agreement, the Audit Rules, and due process. The Appeal does not remotely meet the requisite standard of showing that the District Court's affirmance of the Special Masters' Decision was clear error or an abuse of discretion.

# CONCLUSION

For the above reasons, the orders of the District Court should be affirmed.


Dated: September 11, 2024        Respectfully submitted,

*/s/ Brad S. Karp*

Brad S. Karp
   (bkarp@paulweiss.com)
Bruce Birenboim
   (bbirenboim@paulweiss.com)
Lynn B. Bayard
   (lbayard@paulweiss.com)
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019
Phone:  212-373-3000
Fax:  212-757-3990

*Attorneys for Appellees*
*National Football League*
*and NFL Properties LLC*

## COMBINED CERTIFICATIONS

1.    Certification of Bar Membership

I hereby certify that I, Brad S. Karp, counsel for Appellees, am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.    Certification of Service

I, Brad S. Karp, counsel for the NFL Parties and a member of the Bar of this Court, certify that, on September 11, 2024, an electronic copy of this Brief was filed with the Clerk of Court using the CM/ECF System.  I further certify that all parties required to be served have been served.

3.    Certification of Word Count

I hereby certify that this brief complies with the type-volume limitation of Fed. App. R. 32(a)(7)(B).  As counted by the Microsoft Word word count tool, the brief contains 7,741 words, excluding the parts of the brief exempted by Fed. App. R. 32(f).  The brief is printed using the Century Schoolbook font, 14-point.

4.      Certification of Identical Compliance of Briefs

I hereby certify that the text of the electronic brief being provided to the Court as a .pdf document and the text of the paper version of the brief are identical.

5.      Certification of Virus Check

I hereby certify that a virus check was performed on the electronic brief and that no viruses were found.

/s/ Brad S. Karp
Brad S. Karp, Esq.